Good morning, Justices. Welcome to the Virgin Islands. Thank you. Good morning. I reserve four minutes for rebuttal. Granted. Your Honor, I was not the trial attorney. And this is not the proceeding for me to mundane quarterback the conduct of the trial attorney. However, I submit to this court that the framers of the United States Constitution did not foresee and expect that the government or the court would ignore the accused right to a fair trial. In this case, the government and the judicial branch adopted the ostrich theory and buried their heads in the sand. Therefore, the government and the judge ignored the fundamental rights of the accused because of different reasons such as finance in bringing a witness. Your Honor, I submit to you that when you look at the first issue as it relates to whether the Panagua evidence was material or the tape and favorable, the government theory four persons involved in the murder. Your Honor, I listen to you and I submit to you that the judge is the gatekeeper. And as the gatekeeper, the judge should be sure that the trial is fair. I submit to you and I sincerely believe after reviewing the records, if the shoe was on the other foot and the government needed that tape to be introduced as evidence, it would have been done. Well, but that's not the case before us. I understand that, Your Honor. That's not the condition of the record that is before us. You indicated a moment ago or referred to the money that was necessary and that ultimately did not have to be expended to bring Mr. Paniagua to the Virgin Islands. And I must say that when I first read the briefs in this case, I was a bit troubled by that. But then as I thought the matter through, I kept returning to this whole question of exactly what it was that Paniagua would say. And the requirement would be that his testimony would need to be material and favorable. And if it can't be, then it's not ultimately going to come in. So how would there be any prejudice here at all, even if we were to say, well, it would have been the better practice or the district or the judge should have directed that the witness come down, when the witness ultimately would not have testified to anything that was material and favorable to them? Your Honor, the first thing I'd like to address, and I'm going to respond to your question. However, I am convinced that the court could have gone further by having the confidential informant be disclosed. And the confidential informant could have, whether privately or publicly, give information as to who was on the video. I mean, not the video, but on the page. That's a different issue, but it was raised. Okay. Yeah. So with respect to the confidential informant issue, and we have case law, of course. We have the Giles case. Yes, Your Honor. And it sets forth three circumstances, really, three situations that a C.I. might fall into, where the C.I. is something like an informant, and the defendant generally can't obtain the identity, where the C.I. was an active participant in the crime, and the defendant generally can't obtain their identity, and finally, situations between the two, a kind of case-by-case basis. What do we have here? It would seem to me that the C.I. was not an active participant. Would you agree with that? Not in the murder. Right, right. No, but I submit to you that the records should indicate that the C.I. and Tanagawa had a relationship. He was doing some drug deals for him, et cetera, and basically they were together. They looked for him for a substantial amount of time, were driven around by Detective Assistant Commissioner Hill, Angelo Hill. So basically, while Angelo Hill and another officer put the recording device on the C.I., and Officer Hill could not say that he saw it or knew the person, I submit to you that the record is abundantly clear that someone had information that is material to this case, and whether it is Tanagawa or someone else, then that should have been uncovered, and the court should not just put his head in the sand and not look for that. Mr. Winter, I know you were not trial counsel. Did you represent Mr. Richardson at the appellate division level? No, I did not, Your Honor. I should have asked this at the outset when you raised the C.I. issue, because something I have been unable to find is that this issue relative to the C.I. was raised at the appellate division level. We took a look at the brief there and were unable to see any mention in the brief about this C.I. issue. I do not have any such information at this time, Your Honor. However, that is the reason why I started out by saying that this is not the certain Monday morning quarterback. I understand. Because I have concerns. There was a general incorporation in the brief of the other issues raised by Mr. Mosby, or by the various co-defendants, but there was no explicit argument made as to this C.I. issue. No, Your Honor, I am trying to get to some points because while we put our head in the sand, the government theory that is full person, Your Honor, we have had hitmen here in St. Croix in other cases, and they don't have to operate in one manner. You can have a hitman that shoots someone from a building, but you can have a hitman that will go with three other persons who are going to show him around the island and do it. So basically, for you to accept the fact and say that this is not the type of conduct of the hitman and stuff like that, Your Honor, no one knows exactly what occurred. Is it the defense theory of the case that one hitman shot four weapons? I heard that there were four hitmen. I do not read it that there was one hitman that shot four hitmen. Four hitmen dressed in black. I say there were four hitmen, and there is a possibility, and that is why you needed to uncover more information whether from the confidential informant and get in if it is Penagua and what happened. Because I can see a hitman coming to the Virgin Islands from Puerto Rico. I have been trying cases for years. You bring a hitman from Puerto Rico, and then he meets the people he goes on with, then he bonds with them, and the four of them, he is in charge, but the four of them go and they do what they have to do. Now, what is important, Your Honor, is that if Penagua was one of them that is there, SKS could have said that, basically, if the hitman was one that was there, then it all of a sudden excludes Maurice Richardson as the potential if you are talking that there were four people. And I think that that is when it comes to the relevancy, Your Honor. The jury could have excluded Maurice because Penagua was present. The jury could have excluded Maurice because the hitman from Puerto Rico was present. And, Your Honor, while there is a process that can be used... If there were hitmen, why did your client tell Mr. Coker that they needed to bury the shotgun in the yard? Your Honor, to this date, my client, it is my position, my client never told Mr. Coker that. That is what Coker said. Okay, that is what you are saying. There is a difference between whether... Then whose decision is it to decide whether Coker is lying or telling the truth? Well, I submit to you that that is another thing and that basically the corroboration... Your Honor, we have... Let me try that question again. Whose decision is it to decide whether Coker is telling the truth when he said that Richardson said he had a hot, sawed-off shotgun and they needed to bury it in the yard? Who decides whether Coker is telling the truth or lying? The judge will decide that because... That is the judge's decision. ...as to the corroboration. So, in this case, we have heard now from two defense counsel that it is the jury's decision to decide whether to admit hearsay evidence and it is the judge's decision to decide whether a witness tells the truth. Your Honor... Isn't that backwards on both counts? No, Judge, it is my position that the judge is going to weigh the evidence and see if it is sufficient in order to allow Coker to testify. Well, nobody objected to Coker's testimony, so we are viewing for plain error, are we not? Your Honor, basically, that is another reason why... You don't want a Monday morning quarterback. ...my argument with that, because there are other procedures that can be invoked at a later point in time, okay? But it is not this time, no. So, I am not prepared to argue this and then you tell me that is not what you are here for. I am trying to get to the meat of, basically, it does not... But the jury, you have to concede, the jury decides whether Coker was lying or not. Ultimately, the jury decides. And the jury apparently decided Coker was telling the truth. Yes, Your Honor, under the totality of circumstances, you can reasonably assume that they believe that because of the conviction. However, what I am saying is that in the beginning, initial, there was not enough corroboration on the case law to allow Coker to testify. And what I mean by that is that I live in St. Tuck, St. Croix and everything that I am reading now, years later, is what I was hearing in the newspaper. So, Coker did not have anything that is so unique. There was a theory that there were narcotic strike force agents and stuff like that. There wasn't a paper and everything. And what is so interesting in this case, Your Honor, years later, the government filed charges against police officers, narcotic strike force agents, and the case was tried in St. Thomas. So, basically, the theory that it could have been officers involved is not far-fetched. It is not far-fetched at all. All right. Assuming that that is the case, I want to take you back to your argument with respect to the confidential informant, because I continue to be troubled by that issue on several layers. I had asked about the nature of the confidential informant, what type of CI it was. And I'll recede from that because I think I recall that neither side discussed the Giles case that I mentioned in their brief. Yes, sir. Giles is referred to in the case. Was it? Disclosure of an informant's identity or the content of his communication are relevant and helpful to defense. Their privilege to keep their information confidential must yield to the due process rights of the accused. Whatever the nature of that CI is, may be ultimately of some importance to our analysis in this case. But just in terms of importance to the defense, am I correct that it would have been important to the defense because the CI was the only person, the only other person, who could have identified the speaker on the tape and could have said the speaker was Paniagua? Yes, your honor. Am I correct in that regard? You could have said that. Because I want to hear from the government on that. And basically, and that's one of the reasons I said that if the government needed the Paniagua or needed information from the CI, they could have obtained it and they would have obtained it and the Paniagua would have been present. But all that information, and Judge, honestly, while I'm not mourning quite a bit, I believe that Maurice Richardson's attorney piggybacked too much on the Mosby attorney and he did not go forward and ask these relevant questions pertaining to the CI. And I think that the court and the people had a duty to disclose. And we had our present duty to get that information. And basically, I submit that if Paniagua didn't say it, then someone made the statement unless the CI concocted that entire story and did the tape and all of that is false. And if that's the case, he should have been charged. All right, Mr. Winter, we're over time by more than three minutes, but we'll have you back on rebuttal. Thank you very much. And we'll hear next from Ms. Tepper. Good morning again, your honors. Pamela Tepper on behalf of the government. Let me address a few issues. One, the issue that the defense raises regarding Mr. Coker's testimony. The court points out, and it's very clear on the record, that there was no objection to Mr. Coker's testimony at any point. With regard to Mr. Coker's testimony, there was sufficient corroboration through a number of witnesses as to his observations as to what Mr. Richardson said to him and the fact that Mr. Richardson asked him to hold a sawed-off shotgun that had black tape on it and that he was asked to bury it. In addition to that, Mr. Selwood observed a similar-looking weapon in New York's latest fashion on the very afternoon of Officer Hodge's murder. In addition, Mr. Pennyfeather also had observations with regard to Mr. Coker's testimony in that he saw a shotgun that was placed in the bush, a sawed-off shotgun that was placed in the bush at the scene where Officer Hodge was shot. In addition to that, Ms. Celestine also testified that she saw a man hiding something in the grass near the home, and Officer Hunt testified that he had a towel that had gun residue, and one of the witnesses saw a towel in New York's latest fashion. The court was very clear in its analysis that there was sufficient corroborating information to support Mr. Coker's testimony that Mr. Richardson did confess to the crimes with regard to his participation in the Hodge murder case. So with regard to that issue, at best, Your Honor, we have a plain error analysis since there was no objection, and as counsel said, there was not enough corroboration. The court noted both at the trial level and the appellate level that there was absolutely sufficient corroboration by independent evidence, both through witnesses and forensic evidence, that supported the theories behind Mr. Coker's, not the theories, but his testimony, his factual testimony as to what happened between both he and Mr. Richardson, one of the defendants in this particular case. Your Honors, the issues, there's some real question as to whether some of the issues that the defense counsel attempts to argue were actually properly raised before this court, and I think we need to address those issues because... Can you take us step-by-step through those which were not raised, not properly preserved? Yes, Your Honor. The issue with regard to the confidential informant was not properly preserved at trial. By both, we're talking now just Richardson? No, we're talking now just Richardson. Because if it is only by, we have another issue that might arise if we have an issue raised in the presence of the other party in counsel but not specifically raised by them. So Richardson did not, neither defendant raised the CIA issue? No, no, no, no, Your Honor. No, Mr. Mosby did raise that issue throughout the trial. However, Mr. Mosby did not follow through with those issues. And, Your Honors, there's some real question... Did not follow through in what respect? That's what I was going to say. Your Honor, there's some real question as to who was being represented by what particular issues during the trial. And I say that because there is a number of points within the trial transcript that Mr. Mosby's defense counsel specifically says, I am speaking on behalf of my client only, and that is with regard to Mr. Paniagua's issues and testimony with regard to the confidential informant. And again, I was not at the trial level, so I'm not trying to Monday morning quarterback, as was suggested by defense counsel. However, the defense counsel at the trial level never made any objections and never really participated in any of those conversations. It was very clear throughout the trial that it was Mosby's counsel who was pushing and pushing and pushing for not only Mr. Paniagua's testimony to be live before the jury, but also for the tape. So those issues I would submit to the court. It's real questionable as to whether those issues are even properly before the court because Mr. Richardson's counsel really did not raise those issues on his behalf during the trial. Silence. When Mr. Coker testified, let me back up, he withstood twice cross-examination from Mr. Richardson's counsel. So to say now that, one, the testimony was improper, or to also say at this point that there wasn't sufficient proof, I think is a misstatement of the facts and the record that's before this court. I'm trying to determine your... I believe there were some other issues that were before the court, and I don't want to confuse, to be very honest with you, the different briefs, but I do know that the appellant in this particular instance did not properly bring up the situation for the confidential informant. I don't want to overlap because I think we've kind of raised a number of issues in the previous argument that may be addressed if properly raised in this particular situation. So at this point, Your Honors, if there aren't any other issues, unless you want to talk about the sufficiency issue, which, again, there was sufficient evidence to support the conviction based on Mr. Coker's testimony and the connections of his participation in the conspiracy. Clearly, he had a weapon. Clearly, in addition to that, there was a representation by all defense counsel that none of the defendants had a license to possess a weapon. So that was a stipulation that was given by the defense. So at this point, Your Honor, the government is requesting and asking that these convictions be affirmed and upheld. As there was sufficient evidence, the trial court acted properly within the confines of the law and with regard to his discretion as what the court has been saying as a gatekeeper. He clearly had a fair trial. All his due process rights were preserved. And, Your Honors, if there are no further questions, the government says thank you very much for the opportunity to present to the Third Circuit. Thank you very much, Ms. Tepper. Thank you, Your Honor. I appreciate it. Rebuttal, Mr. Lincoln. Thank you, Your Justices. I'm going to just try to raise some fast issues because I don't have much time. Okay, Your Honor, one of the things is that the record is not clear. And that is on both sides. Was it black tape, duct tape, or what color was the tape? But the people are making reference to a tape that was on the sawed-off shotgun. And I submit to you that the evidence is so vague that you're going to say it had a duct tape. But nobody asked Coker what was the color of the duct tape. Not because duct tape means it's going to be gray. Not because duct tape means it's going to be red or whatever color. It would have been good if Coker could say what the color of the duct tape. Now, for the first time, and it's not in the record, Attorney Tepper says that it was black tape. She didn't say duct tape. She said black tape. And I submit to you that's why the record is so confusing. The next thing, Your Honor, Coker testified that somebody who he doesn't know picked up the shotgun. You're going to have a friend, and the friend gives you something to hold, and two or three persons who you don't know are going to know to come to you, and you're going to dig up the shotgun and give it to him? Aren't these all credibility arguments that you're raising, questions of credibility that were before the jury? Yes, and they were not raised competently or effectively. But I suggest to you that when you're looking at the believability and the corroboration of the testimony of Coker. Now, the next thing is that they tried to make a big thing of the towel. Your Honor, I stayed to a hotel for the last two nights, and all I got there were white towels. And white towels, if there was a towel that was found by the police officer at the scene, and they saw a towel at Mosby's business, and Coker is saying that he saw a towel. If the towel was at Mosby's business and was used to be involved in a crime and retrieved by the police officer, well then how, unless you got two towels, did Coker get a towel? But the government or the people argue in the brief that it's the same towel. It makes no sense. Towel's not that probative is what you're saying? No, but they tried to make a big thing... What about the probative value of Richardson telling Coker that, quote, they went down Lindbergh Bay in the bushes and stake him out and waited until Hodge came out of his house and shoot him. What about the probative value of that? Again, Your Honor, my client did not make such statement, and I read those statements in the newspaper. So it is public knowledge, and that is my major concern. Your argument is Coker read that in the paper and just parroted what he read in the paper. Yes, and then he lied. And the fact that he's lying, it's the judge's job to decide, not the jury. It's to see if there's enough corroboration to allow him to testify. And the judges decided in their opinion that there was enough corroboration to allow him to testify. And then the jury now listens to the testimony, and they make the decision. My problem is that the evidence and the testimony of Coker, it was not independent sufficiently to be admitted. And on cross-examination, he was asked these things. And this is covered quite eloquently, in my opinion, in the brief. And that's the reason why I was not addressing it, Your Honor. But I want, before my time runs out, 21 seconds. It is convenient now to raise the question whether the objection made were joint objections. And it's sad. I look for it to see if I can argue to the jury that when Mosby attorney makes an objection, it's for all. And some trial judge knows this and accepts this. And some trial judge from the beginning will say, I don't want all 10 of you getting up here and object to the same thing. When you object for one, it's for all. The sad part about it, I cannot say that I found any such ruling in the record. And I believe that to try to now separate the two is a divide-and-conquer trick by the people or the government. However, I submit to you that if Mosby attorney has a joint trial, then it is also an effective objection by Morris Richardson, Your Honor. I thank you very much. Are there any questions that you'd like me to respond to, Justices? I don't believe. Thank you very much. Thank you. It was a privilege. Thank you, sir. We'll take this matter under advisement. We thank counsel for their helpful arguments.